UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

ALEXANDRE NZEBELE,

                Plaintiff,

        -against-

CITY OF NEW YORK; POLICE DEPARTMENT OF
THE CITY OF NEW YORK; P.O. RAY DUTTON,
Shield # 29141; P.O. CARLOS PIZARRO, Shield #
5087; P.O. SANTIAGO INOA, Shield # 11409; P.O.
TAIYUEN LEE, Shield # 26345; SGT. CHRISTOPHER
RYAN, Shield # 4698, and JOHN DOE #1, all intended
to be the police officers who harassed the plaintiff on
December 24, 2014 and pushed him to the ground for no
reason,

                Defendants.

-------------------------------------------------------------------X

Docket no.
15 Civ. 851 (VEC)

**AMENDED COMPLAINT**

**Jury Trial Demanded**

Plaintiff, complaining of the defendant, by his attorneys, THE BERKMAN LAW OFFICE, LLC, alleges for his complaint as follows:

**INTRODUCTION**

1. The plaintiff is a comedian, dancer, and comedic video maker. He specializes in comic pranks in the style of Candid Camera. He publishes videos on YouTube and elsewhere, and some of his material has gone viral.

2. Television star Ellen DeGeneres has issued a public "Dance Dare" in which she has urged people to film themselves dancing behind strangers without them being aware of it. Numerous people across the country have taken Ellen DeGeneres up on this dare, and a great

many "Dance Dare" videos have been posted on Ellen DeGeneres' website, www.ellentube.com, and on YouTube.

3.      On Christmas Eve, December 24, 2014, the plaintiff was creating his own Dance Dare video. He spent several hours in New York's Grand Central Terminal being filmed dancing behind strangers and creating a truly comic video. He then went outside Grand Central Terminal. Several New York City police officers were standing in the street in front of a New York City Police School Safety van. Plaintiff stood in front of the van and behind one of the officers and began to dance. He was rapidly surrounded by a group of at least six police officers, including one wearing a sergeant's stripes. Some of the officers had been in the van, and some had been standing in the street. The officers grabbed plaintiff, shoved him against the van, frisked him, taunted him with words such as "what the f*** is wrong with you?", "are you f***ing kidding me?", "what are you dancing in the street for?", and "are you a f***ing asshole?". After that, the officers forcefully shoved the plaintiff causing him to fall to the ground.

4.      The entire encounter was captured on video, with sound. The Dance Dare video plaintiff ultimately produced can be found here, http://youtu.be/6sbCzXQsVoQ, and has more than 650,000 views. The excerpt of the encounter with the police officer was viewed more than one million times, http://youtu.be/zFJnr1_bjSM. The raw footage of the encounter with the police was published by TMZ, http://www.tmz.com/videos/0_zdh17uue.

5.      Throughout the confrontation with the officers the plaintiff repeatedly tried to explain and said "I'm sorry" multiple times. The officers were not interested in listening, and treated plaintiff like dirt. At no point did the plaintiff act in any way threatening to the officers. The officers had no cause to manhandle the plaintiff and throw him to the ground.

6.      After plaintiff was thrown on the ground the officers went back to what they had been doing. None of the officers present—including the sergeant—criticized the officer(s) who had actually shoved the plaintiff to the ground. They acted as nonchalantly as if they had just squashed a bug.

7.      The plaintiff was engaging in free expression, dancing in the street for a few seconds—an American pastime protected by the Constitution and celebrated by Martha Reeves and the Vandellas in 1964 (http://youtu.be/GuCBXTfoVq8) and later by countless cultural icons, including the Mamas and the Papas (http://youtu.be/z2MTbbPotwo), Mick Jagger and David Bowie (http://youtu.be/9G4jnaznUoQ), The Grateful Dead (http://youtu.be/4xKkfb5ABsc), Van Halen (http://youtu.be/0CAHDI_vkSs), The Who (http://youtu.be/JD5muIGEZJw), Tim Curry (http://youtu.be/0xrzyvrUSb8), and even Dora the Explorer (http://youtu.be/FXgRbiBp1ZE). If the police officers did not want plaintiff to dance in their vicinity, they could simply have asked him to move. Dancing is protected speech, not a crime. Just because a police officer did not like plaintiff's dancing behind him for a few seconds did not give the officer, or the other five officers, the right to harass or verbally abuse the plaintiff, or to push him onto the ground.

8.      Police intervention, including intervention that silences speech and that involves police stopping and frisking, may be legitimate in certain situations. But the stop and the frisk must be carried out in accordance with the law, and with due respect for the rights of the public. Police officers are required to enforce the law, not to create and administer their own *ad hoc* "street justice." Nasty insults and shoving someone to the ground are not acceptable conduct for police offices interacting with the public.

**THE PARTIES**

9. At all times mentioned herein, the plaintiff, ALEXANDRE NZEBELE is a natural person residing in the City, State and County of New York.

10. Upon information and belief, the defendant CITY OF NEW YORK ("City") is a municipal corporation organized and existing under the laws of the State of New York.

11. Upon information and belief, the defendant POLICE DEPARTMENT OF THE CITY OF NEW YORK ("NYPD") is a subdivision of the defendant City.

12. Upon information and belief, the defendant P.O. RAY DUTTON, Shield # 29141, is a police officer employed by the defendants City and/or NYPD.

13. Upon information and belief, the defendant P.O. CARLOS PIZARRO, Shield # 5087, is a police officer employed by the defendants City and/or NYPD.

14. Upon information and belief, the defendant P.O. SANTIAGO INOA, Shield # 11409, is a police officer employed by the defendants City and/or NYPD.

15. Upon information and belief, the defendant P.O. TAIYUEN LEE, Shield # 26345, is a police officer employed by the defendants City and/or NYPD.

16. Upon information and belief, the defendant SGT. CHRISTOPHER RYAN, Shield # 4698, is a police officer employed by the defendants City and/or NYPD.

17. The police officers named herein are intended to refer to the officers of the NYPD who stopped and harassed the plaintiff on December 24, 2014 ("Incident Time"). These officers names were provided by the City of New York Law Department.

18. In addition to the officers named by name and shield number above, upon information and belief there was one additional officer involved in the Incident whose name remains unknown to the plaintiff and will be referred to henceforth as JOHN DOE # 1.

19. Upon information and belief, at the Incident Time the officers in question were assigned to an NYPD School Safety van bearing license plate 6608-09.

20. Upon information and belief, the following photographs depict some of the officers involved:



Sergeant's stripes

## JURISDICTION AND VENUE

21. This Court has jurisdiction over this matter pursuant to 28 USC § 1331, as plaintiff asserts causes of action arising under 42 USC §§ 1983, 1985.

22. Venue is properly placed in this court since a substantial part of the events or omissions giving rise to the claim occurred in this District.

## THE UNDERLYING FACTS

23. On or about December 24, 2014 the plaintiff was lawfully present on East 42nd Street in Manhattan outside of Grand Central Terminal.

24. In an exercise of free expression, plaintiff danced in the street for several seconds while being filmed by another individual.

25. The location where the plaintiff was dancing was in proximity to several police officers.

26. The police officers named as defendants herein accosted the plaintiff, detained him against his will, harassed him, verbally abused him, and threw him on the ground.

27. At no point did the defendant police officers have legally sufficient grounds to stop or arrest the plaintiff.

28. At no point did the defendant police officers have legally sufficient grounds to verbally abuse the plaintiff.

29. At no point did the defendant police officers have legally sufficient grounds to throw the plaintiff to the ground.

30. As a result of the defendants' conduct, the plaintiff was caused to suffer injuries, including: deprivation of liberty; invasion of privacy; indignity; mental anguish and distress; pain and suffering; and plaintiff has been otherwise damaged; all of these injuries are permanent in nature and continuing into the future.

## AS AND FOR A FIRST CLAIM FOR RELIEF

31. Plaintiff repeats and re-alleges each of the foregoing allegations with the same force and effect as if more fully set forth herein.

32. Upon information and belief, at all times relevant to this complaint, the individual defendants and NYPD were acting under the color of state authority.

33. Upon information and belief, the individual defendants and NYPD, under the color of state law and acting on behalf of the state, subjected the plaintiff to false arrest, assault, battery, use of excessive force, and conspiracy to commit all of the above.

34. Upon information and belief, at all times relevant to this complaint, the individual defendants subjected the plaintiff to the aforementioned conduct, which constituted a deprivation of his rights, privileges, and immunities secured by the Constitution and laws of the United States of America and the State of New York.

35. By reason of the foregoing, the plaintiff is entitled to recover from the individual defendants pursuant to 42 U.S.C. §§ 1983, 1985 for the full extent of his damages, in an amount to be determined at trial, but not to exceed $5,000,000, plus costs and attorney's fees permitted by statute.

## AS AND FOR A SECOND CLAIM FOR RELIEF

36. Plaintiff repeats and re-alleges each of the foregoing allegations with the same force and effect as if more fully set forth herein.

37. The individual defendants and NYPD compelled plaintiff to cease from making creative expression without legal justification.

38. The individual defendants and NYPD deliberately and repeatedly insulted plaintiff and then threw him to the ground.

39. The defendants' actions had the intent and/or the effect of chilling future similar speech by the plaintiffs and others.

40. The plaintiff was in a public forum both when he was engaged in expression and when he was stopped and/or arrested.

41. The plaintiff's creative expressive expression is protected by the Constitution.

42. The individual defendants and NYPD violated that protection by silencing the plaintiff and chilling future similar expression. *See*, *e.g.*, *Texas v. Johnson*, 491 U.S. 397 (1989); *Schad v. Borough of Mount Ephraim*, 452 U.S. 61 (1981); *Doran v. Salem Inn, Inc.*, 422 U.S. 922 (1975); *Grayned v. City of Rockford*, 408 U.S. 104 (1972); *cf. Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1988).

43. Even if the plaintiff's activities were deemed simply to be conduct, rather than creative expression, that conduct is likewise protected by the Constitution.

44. The individual defendants and NYPD violated that protection by silencing the plaintiff and chilling future protected conduct. *See*, *e.g.*, *United States v. O'Brien*, 391 U.S. 367 (1968); *cf. Erie v. Pap's A. M.*, 529 U.S. 277 (2000); *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560 (1991).

45. The individual defendants and NYPD, acting under the color of state law, deprived and threaten to continue to deprive the plaintiff of his right to engage in behavior secured by the First Amendment to the United States Constitution.

46. By reason of the foregoing, the plaintiff is entitled to recover from the individual defendants pursuant to 42 U.S.C. §§ 1983 and 1985 for the full extent of his damages, in an amount to be determined at trial, but not to exceed $5,000,000, plus costs and attorney's fees permitted by statute.

## AS AND FOR A THIRD CLAIM FOR RELIEF

47. Plaintiff repeats and re-alleges each of the foregoing allegations with the same force and effect as if more fully set forth herein.

48. Upon information and belief, the defendants City and NYPD have permitted a culture to develop among certain police officers under which police officers feel at liberty to inflict a degree of "street justice" on members of the public who offend those officers' notions of proper conduct. This "street justice" can take the form of humiliation, insults, harassment, detention, or physical abuse. An example of such street justice recently resulted in the death of Eric Garner.

49. In this case, there were multiple officers involved, including a sergeant, and not one of them spoke up to stop the abusive behavior directed towards the plaintiff.

50. The individual defendant's actions, coupled with the inaction of the sergeant or sergeants then present, demonstrates that there exists within the NYPD a culture of harassment, intimidation, gratuitous use of insult, unnecessary violence, aggression, territorialism, a misplaced sense of superiority and/or authority, and the reflexive use of unlawful detention and/or abusive conduct.

51. Defendants City and NYPD foster this abusive culture by failing to properly train officers to respect the rights of the public, failing to discipline officers who engage in such abusive conduct, disregarding civilian complaints, and tolerating an attitude among many police officers that is abusive of the public's rights.

52. That this attitude is tolerated by the City and NYPD is confirmed by the fact that there were at least six police officers involved in this altercation, including a sergeant, and none of them demonstrated a scintilla of concern that his actions might lead to discipline or criticism.

53. Indeed, even after this incident occurred and the video chronicling it went viral, the City and NYPD have taken no steps to discipline the officers involved.

54. Upon information and belief, there have been a great many similar incidents, many of which have been widely reported, have been the subject of civilian complaints to the NYPD, or have been the subject of litigation, including a widely publicized class action in which serious findings were made against the City and NYPD, but the City and NYPD have not taken sufficient measures to train, supervise and discipline its officers.

55. By reason of the foregoing, the plaintiff was damaged as alleged above.

56. By reason of the foregoing, the plaintiff is entitled to recover from the City and NYPD pursuant to 42 U.S.C. §§ 1983, 1985 for the full extent of his damages, in an amount to be determined at trial, but not to exceed $5,000,000, plus costs and attorney's fees permitted by statute.

**WHEREFORE**, the plaintiff demands judgment against the defendant in the amounts and for the relief requested herein, plus attorney's fees to the extent permitted by law.

Dated:   Brooklyn, New York
         March 13, 2015

Yours,

THE BERKMAN LAW OFFICE, LLC
*Attorneys for the Plaintiff*

by: _____
Robert J. Tolchin

111 Livingston Street, Suite 1928
Brooklyn, New York 11201
718-855-3627